**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
DORIS A. RIGGS,                  )
                                 )
              Plaintiff,         )    CIVIL ACTION
                                 )
v.                               )    No.  04-1306-MLB
                                 )
AIRTRAN AIRWAYS INC.,            )
                                 )
              Defendant.         )
                                 )
```

**MEMORANDUM AND ORDER**

Plaintiff has filed a complaint against defendant AirTran Airways Inc. (AirTran) alleging a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. The case comes before the court on defendant's motion for summary judgment. (Doc. 56). The case has been fully briefed and is ripe for decision. (Docs. 57, 59, 63). Defendant's motion is granted, for reasons herein.

**I.   FACTS AND PROCEDURAL HISTORY**

Plaintiff worked for defendant as a Customer Service Representative from April 19, 2002, until June 19, 2003. At the time of her termination, plaintiff was 67 years old. Plaintiff's duties included working at the front ticket counter, the gate counter, and on the ramp loading and unloading luggage. Defendant's manager was Gina Dolieslager, who was over the age of forty at the time of plaintiff's termination. On two different occasions, Dolieslager commented on plaintiff's age. On the first occasion, Dolieslager and plaintiff were discussing Dolieslager's mother undergoing heart surgery. They began discussing age and Dolieslager remarked that plaintiff was Dolieslager's age. Plaintiff responded that she was 67

years old. Dolieslager was surprised that plaintiff was the same age as Dolieslager's mother. Plaintiff was not offended by Dolieslager's comment and did not report the conversation to anyone. On the second occasion, Dolieslager came to the counter and lifted suitcases for plaintiff, commenting that plaintiff should not be lifting them because she was too old. Again, plaintiff did not report this remark to anyone. (Docs. 57 at 2-3; 59 at 3-4).

On June 5, 2003, plaintiff assisted in checking in a large choir group of children. At some point, a woman asked plaintiff to check in a girl who was running late and not present. Plaintiff responded that she could not check in an individual who was not physically present. The woman became very upset and plaintiff was fearful that the woman was going to attack her. After the check-in was complete, Dolieslager talked with plaintiff and two other individuals about their morning. Plaintiff told Dolieslager that it was a rough morning. (Docs. 57 at 4; 59 at 4).

Plaintiff went on vacation from June 9 through June 18. On June 9, Jessica Senn, the choir group's travel agent, sent the following e-mail to Bill Howard, AirTran National Sales Director:

> I contacted you on Friday, June 6, 2003, in regards to problems the Children's Choir had at check in at the Wichita airport. The choir and myself are very upset with AirTran and the way we were treated upon check-in.
>
> * * *
>
> While beginning the check-in process at about 6:00 or 6:15 AM, two ladies appeared at the counter from the back room. One of the ticketing agents, Gina, was extremely rude and failed to be of good service to us. The other agent was rude, but not as bad as Gina - I do not have the other woman's name. She had long dark hair. Gina seemed to "ramrod" around and I even witnessed her snipping at the supervisor and telling him how things should be done. Gina

-2-

> then proceeded to yell at some of the passengers, pounded her hands on the counter and yelled "next" during the check in process before the other passengers could even step away from the counter and even went as far to tell some of the children passengers that they can't get on this flight from Wichita to Atlanta. Obviously in the name of the group, Children's Choir, you can tell that the majority of the passengers were minors and they couldn't fly alone without an adult. Many of these kids had never flown before. Parents of the Children's Choir trusted the group leaders/chaperones with their kids on this trip.
>
> * * *
>
> I being the travel agent am inclined to say that I will not sell AirTran ever again for groups. This group spent a lot of money for this trip and if this is how they'll be treated on AirTran, I DO NOT want any of my other groups to experience this. My clients deserve better.
>
> * * *

(Doc. 57, exh. 13).

Dolieslager contacted Senn in order to discuss the complaint. Dolieslager told Senn that she had not been at work that day and could not have been the person Senn referred to as "Gina." Dolieslager asked Senn to describe the individual who called herself "Gina." Dolieslager testified that Senn's description only matched plaintiff. Dolieslager felt that plaintiff's actions warranted termination and called Amy Morris, manager of employee relations and diversity, who gives final approval for all terminations. Morris approved the termination of plaintiff. Dolieslager completed the appropriate paperwork which listed the reasons for termination as "Doris was extremely rude to a large group of passengers. When asked her name so that the customer could write a complaint letter, Doris said, 'Gina.'" Plaintiff was terminated upon her return from vacation on June 19, 2003. (Docs. 57 at 6-8; 59 at 4-5).

Plaintiff appealed her termination to AirTran's Peer Review

-3-

Panel. The Panel upheld the decision. Plaintiff filed a charge with the Kansas Human Rights Commission alleging that she was terminated because of her age. Plaintiff filed this suit against defendant on September 16, 2004. On April 15, 2005, the court dismissed plaintiff's claim for intentional infliction of emotional distress and plaintiff voluntarily withdrew her claim for tortious interference with contractual relations. (Docs. 57 at 8-9; 59 at 5-6).

Defendant moves for summary judgment on plaintiff's remaining claim of age discrimination. Defendant asserts that the decision to terminate plaintiff was not motivated by age but was reasonable based on the information provided to defendant at the time of the termination.

## II.  SUMMARY JUDGMENT STANDARDS

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

### III. ANALYSIS

A plaintiff can prove an age discrimination claim by presenting either direct or indirect evidence of discrimination. Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Danville v. Regional Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002). Plaintiff asserts that the two comments made by Dolieslager constitute direct evidence that she was terminated because of her age. Plaintiff has failed to establish how the comments, on their face, demonstrate that her termination was because of her age. The comments, that Doleislager was surprised to learn of plaintiff's age and the remark that plaintiff could not lift a suitcase because of her age, may constitute circumstantial evidence, but not direct evidence of age discrimination.

Since plaintiff has failed to provide direct evidence of age discrimination, the court must determine whether she has provided indirect evidence of discrimination by utilizing the McDonnell Douglas framework. Stone, 210 F.3d at 1137. Under this framework, plaintiff has the burden to establish a prima facie case of discrimination. If plaintiff meets this burden, then defendant must articulate a legitimate non-discriminatory reason for the action. If defendant makes this showing, the burden shifts again and plaintiff must show

that defendant's proffered reasons are pretextual. <u>Sanchez v. Denver Public Schools</u>, 164 F.3d 527, 531 (10th Cir. 1998).

Defendant has conceded for the purposes of this motion that plaintiff can establish a prima facie case. The burden then shifts to defendant to establish a legitimate reason for plaintiff's termination. Defendant has asserted that it terminated plaintiff for being rude to the choir group and impersonating her manager, Gina Dolieslager. The court finds that defendant has met its burden in establishing a legitimate nondiscriminatory reason.[1] The burden now shifts back to plaintiff to demonstrate that defendant's reason is pretext for illegal discrimination.

> A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false, <u>see</u>, <u>e.g.</u>, <u>Cole v. Ruidoso Mun. Schools</u>, 43 F.3d 1373, 1380-81 (10th Cir. 1994)(finding that evidence supporting the conclusion that the defendant's reason for the nonrenewal of plaintiff's employment contract was false was sufficient for plaintiff to survive summary judgment); (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances, <u>see</u>, <u>e.g.</u>, <u>Mohammed v. Callaway</u>, 698 F.2d 395, 400-01 (10th Cir. 1983)(finding that departure from employment criteria set out in job announcement so as to disadvantage minority employee seeking promotion was probative of discrimination); or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

<u>Kendrick v. Penske Transp. Services, Inc.</u>, 220 F.3d 1220, 1230 (10th

---

[1] Plaintiff does not seem to challenge defendant's reason, but merely moves onto a discussion of pretext. <u>See</u> Doc. 59 at 19-20.

-6-

Cir. 2000).

Plaintiff has essentially asserted that she has established pretext by evidence that the stated reason was false and that defendant acted contrary to its unwritten policy.

### A.  False Reason

When reviewing whether a plaintiff has established that the employer's reason was false, the court must "look at the facts as they appear to the person making the decision to terminate plaintiff." Id. at 1231.  In this case, Dolieslager made the recommendation to terminate plaintiff and initiated the termination after the approval from Morris.  The court must look at the facts from Dolieslager's perspective.  See Hill v. Steven Motors, Inc., 97 Fed. Appx. 267, 274, 2004 WL 958097, *5 (10th Cir. 2004)("In this case Mr. Steven made all the hiring decisions and approved Plaintiff's termination, but Mr. Shaffer was the one who actually terminated Plaintiff. We must view the facts from his perspective.") "The relevant inquiry is not whether [Dolieslager's] proffered reasons were wise, fair or correct, but whether she honestly believed those reasons and acted in good faith upon those beliefs." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed.2d 106 (2002).

Plaintiff asserts that her numerous customer compliments and twenty-five years of work at the post office without complaints support an inference that the company's belief is unreasonable.  This fact does not support a conclusion that Dolieslager did not believe the proffered reasons for plaintiff's termination.  See id.

Dolieslager has testified that at the time of the termination she believed plaintiff was the individual described in Senn's complaint and the complaint was sufficient to proceed to termination.

Plaintiff has also asserted that Dolieslager could not have believed that plaintiff was the individual described in the complaint because plaintiff did not admit to being rude and both Judith Beddow and Tammy Spero-Malley informed Dolieslager that plaintiff had not been rude. Beddow, however, testified that she did not remember what she said to Dolieslager but she could have said either she did not hear plaintiff being rude or that plaintiff was rude. Beddow also testified that she did not believe that Tammy said plaintiff was rude but she could not remember. Beddow's testimony does not support plaintiff's assertion that Dolieslager was informed that plaintiff was not rude.[2] (Doc. 59, exh. 16 at 60, 64). This testimony, however, does not support the conclusion that Dolieslager did not honestly believe that plaintiff was the individual described in the complaint.

The evidence shows that Dolieslager was confronted with a complaint, the complainant described plaintiff as the individual and plaintiff had admitted that she had a rough morning with the choir group. Plaintiff has failed to establish that Dolieslager was presented with any evidence that to show Dolieslager's belief that plaintiff was the individual that was rude and impersonated

---

[2] Plaintiff also asserts that Dolieslager should have known it was a different individual since Beddow testified that plaintiff did not stand on the luggage scale. (Doc. 59, exh. 16 at 94). However, Senn's first email did not reference anyone standing on the luggage scale. Senn's complaint about standing on the scale did not appear until her affidavit dated June 29, 2005. (Doc. 59, exh. 18). Therefore, the fact that plaintiff did not stand on the scale is irrelevant.

Dolieslager was incorrect.

Plaintiff may also establish pretext by presenting evidence of age-related comments to demonstrate that defendant's reason for termination was false. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998). "In order to rely on age related statements, [plaintiff] must show that they were made by a decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate." Id. Both of the statements in this case were made by a decision maker, Dolieslager. The first statement, a mere comment that plaintiff was the same age as her mother, is not sufficient to infer discriminatory intent. Id. (holding that a comment by a supervisor comparing ages is not sufficient to establish pretext).

The second statement, that plaintiff could not lift the suitcases because she was old, merely amounts to a "stray remark" which is insufficient to establish pretext. Plaintiff has completely failed to establish that a nexus existed between that statement and the decision to terminate. While the statement has been introduced, plaintiff has not produced the time period in which this statement was made. "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994) This remark is "isolated, in the sense that it was only made once, and stray, in the sense that plaintiff has not shown an adequate nexus between the remark and [defendant's] decision." Foster v. Ruhrpumen, Inc., 166 Fed. Appx. 389, 392, 2006 WL 322572 *2 (10th Cir. Feb. 13, 2006)(citing Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th

Cir. 2000).

The remarks about which plaintiff complains are insufficient to cast doubt on the legitimate, non-discriminatory reasons offered by defendant.

### B. Similarly-Situated Employees

Plaintiff also asserts that AirTran did not follow its unwritten policy in terminating plaintiff since Dolieslager failed to present plaintiff with the allegations and give her an opportunity to respond. In order to establish that defendant acted contrary to an unwritten policy, plaintiff must demonstrate that similarly-situated individuals were treated differently. Kendrick, 220 F.3d at 1232. Plaintiff asserts younger individuals who committed similar acts were given an opportunity to be interviewed. To be considered similarly-situated, the employees must deal "with the same supervisor and [be] subject to the 'same standards governing performance evaluation and discipline.'" Id. at 1232 (quoting Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997)). The employee violations must also be of comparable seriousness. Id.

Plaintiff has identified four younger individuals who were given the opportunity to respond to defendant's allegations prior to termination.[3] Eric Ardnt was disciplined for using vulgar language with his supervisor and failing to clock in when he was late. Amy

---

[3] Plaintiff has also asserted that Tammy Mero-Spally and Judith Beddow were interviewed about Senn's allegations. (Doc. 59, exh. 14 at 227). However, the questioning was not to inquire about any rudeness that Mero-Spally and Beddow were alleged of doing, but rather questions about plaintiff's activities on June 5. Accordingly, plaintiff cannot compare herself to these individuals since they were being interviewed as witnesses.

-10-

Tattershall and Michelle Hill were interviewed and then terminated after running a company vehicle into a fence and causing damage. Alisha Bulla was disciplined but not terminated for being rude to customers. (Docs. 59 at 13-14; 63 at 5).

Defendant has asserted that these employees violations were not similar to that of plaintiff's. The violations committed by Ardnt, Tattershall and Hill did not involve customers. Defendant can make a distinction between violations against the company and its employees and those violations which are directed at the customers. See Ortiz v Western Resources, Inc., 2000 WL 1473142, *7 (D. Kan. Sept. 28, 2000)(quoting Kendrick, 220 F.3d at 1233)("a company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct.") The court agrees with defendant that the violations committed by those individuals are not comparable to plaintiff's alleged violation. See id. (holding that the plaintiff who was accused of stealing customer property was not similarly situation with another employee who had stolen the employer's property.)

Alisha Bulla is the only individual identified by plaintiff as being disciplined for being rude with customers. Plaintiff, however, has failed to submit any evidence of Bulla's conduct. Plaintiff has introduced Beddow's testimony that Bulla would sometimes get a little short and rude with customers. The difference between allowing a discussion with Bulla about her conduct and plaintiff's termination without an interview may not be a result of age discrimination but because of the individualized circumstances surrounding the infractions. E.E.O.C. v. Flasher Co., Inc., 986 F.2d 1312, 1320 (10th

-11-

Cir. 1992). Plaintiff allegedly impersonated a manager, yelled at children, told them they would not be able to fly, banged her hand on the counter and yelled for everyone to "hurry up." The court has no basis in which to compare plaintiff's alleged conduct with that of Bulla. Plaintiff has the burden to establish that plaintiff's proffered reason for termination was pretext for illegal discrimination and she has failed to do so.

**IV.  CONCLUSION**

Defendant's motion for summary judgment (Doc. 56) is granted.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this <u>  6th  </u> day of June 2006, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE